Filed 11/4/25  Dopak v. Space Exploration Technologies Corporation CA2/4

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| MICHELLE DOPAK,<br><br>    Plaintiff and Respondent,<br><br>  v.<br><br>SPACE EXPLORATION TECHNOLOGIES CORPORATION,<br><br>    Defendant and Appellant. | B342000<br><br>(Los Angeles County Super. Ct. No. 24STCV05506) |

APPEAL from an order of the Superior Court of Los Angeles County, Tony L. Richardson, Judge.  Affirmed.

Orrick, Herrington & Sutcliffe, Melinda Riechert, Rachel Capler and Alexandria Elliott for Defendant and Appellant.

Valles Law, Daniel G. Valles and Kayla Rathjen for Plaintiff and Respondent.

In 2022, Congress amended the Federal Arbitration Act (FAA) (9 U.S.C. § 1 et seq.) by passing the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021 (EFAA; 9 U.S.C. §§ 401–402).  Generally, the EFAA renders arbitration agreements unenforceable at the plaintiff's election in sexual assault and sexual harassment cases that arise or accrue on or after March 3, 2022, the EFAA's effective date.

In 2024, Michelle Dopak filed a lawsuit in the superior court against Space Exploration Technologies Corporation dba SpaceX (SpaceX) and six individuals for several claims arising out of her employment, including a claim for sexual harassment. After SpaceX filed a motion to compel arbitration of the complaint based on the parties' arbitration agreement covering all employment disputes, Dopak filed a first amended complaint (the FAC), which included additional allegations of sexual harassment.  In response, SpaceX filed a second motion to compel arbitration.  The trial court denied the motion, concluding the EFAA precludes arbitration of the entire action.

On appeal, SpaceX argues: (1) the trial court erroneously relied on the FAC's "sham allegations" in support of its conclusion that the EFAA applies; and (2) alternatively, even if the EFAA applies, the trial court erred by not compelling to arbitration Dopak's causes of action that are unrelated to the sexual harassment allegations.  We disagree with SpaceX's contentions and affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

Dopak sued SpaceX and six SpaceX employees on March 3, 2024.  In her complaint, Dopak alleged she was hired by SpaceX in August 2017 as a Production Coordinator.  Dopak began

reporting directly to Anthony Brooks, a Production Manager, in 2019. Dopak alleged that Brooks sexually harassed her and insinuated her job would only be secure so long as she succumbed to his sexual advances. Specifically, Dopak asserted that on one occasion "Brooks informed [her] that he was coming over to her place after work and that they were going to have sex." That evening, Dopak alleges she was humiliated by Brooks and he forced her to have unprotected sex with him, despite her objections. "This pattern of manipulation and forced unprotected sex continued at least one (1) to two (2) times per week throughout September of 2020." Dopak further alleged that Brooks' harassment of her "did not end with the forced sexual intercourse – Brooks would constantly make sexual and demeaning comments to [her] during nearly all of their interactions and/or conversations in the office."

Dopak further alleged that in August 2019, "Brooks arranged for [Dopak] to be promoted to Scheduler level two position in exchange for continuing to sleep with him and submit to his sexual advances." According to Dopak, Brooks' "sexual harassment of [her] continued throughout his employment with SpaceX, which did not end until 2022."

Dopak also alleged that in or around August 2020, "[Dopak] found out that she was pregnant with Brooks' child. As a result, on or about August 13, 2020, [Dopak] informed Brooks of her pregnancy. Brooks verbally berated [Dopak] and began demanding that she make a doctors' appointment to have the child aborted."

In October 2020, "[Dopak] informed Helen Brooks . . . , Brooks' wife, about [her] pregnancy and his affair with her. As a result, Helen began sending messages to SpaceX

3

staff and management with details about Brooks' affair with his subordinate and her pregnancy. Brooks himself even informed people about his actions. . . . Helen's messages and persistent harassing actions towards [Dopak] continued through at least December of 2022."

In March of 2022, "Brooks went on a voluntary sabbatical from SpaceX. It was supposed to last until June 9, 2022, but Brooks never returned from sabbatical."

Dopak further alleged that "[a]fter Brooks finally left SpaceX, [she] informed her supervisor, . . . members of human resources, and others about the situation with Brooks and the affair she was forced to have with him because of the power dynamic between them. Rather than support [Dopak], SpaceX and its management team supported Brooks, its former employee, as [Dopak] had feared all along."

Due to the emotional distress Dopak allegedly suffered, she took a leave of absence from work and faced disability-based discrimination and retaliation by SpaceX. Dopak "eventually returned from her leave of absence, only to experience even more retaliation and harassment by SpaceX." Dopak alleged that SpaceX and its managers blatantly set her up to fail and "deliberately violat[ed] her medical accommodation work requirements in order to force [her] to quit and to specifically retaliate against her not only for her medical leave of absence, but her sexual harassment, discrimination, and retaliation complaints."

Based on these allegations, among others, Dopak asserted 11 causes of action: (1) harassment in violation of the Fair Employment and Housing Act (FEHA); (2) discrimination in violation of FEHA; (3) retaliation in violation of FEHA; (4) failure

to prevent discrimination, harassment, and retaliation in violation of FEHA; (5) intentional infliction of emotional distress; (6) negligent infliction of emotional distress; (7) retaliation in violation of Labor Code section 98.6; (8) whistleblower retaliation (Lab. Code, § 1102.5); (9) California Equal Pay Act (Lab. Code, § 1197.5); (10) Confidentiality of Medical Information Act (Civ. Code, § 56.20); and (11) unlawful business practices (Bus. & Prof. Code, § 17200).

SpaceX moved to compel arbitration of the complaint on April 5, 2024. SpaceX relied on an arbitration agreement Dopak signed upon accepting an offer of employment from SpaceX. The agreement states that the parties agree to resolve all "Covered Claims" through final, binding, and confidential arbitration under the FAA and administered by JAMS pursuant to its Employment Arbitration Rules. The agreement defines "Covered Claims" as "any claim (except a claim that by law is non-arbitrable)" and listed several examples including claims of employment discrimination and harassment. SpaceX argued that the EFAA does not apply because, based on Dopak's own allegations, all of the alleged sexual harassment occurred years before the EFAA was enacted.

In response, Dopak filed the FAC, alleging the same 11 causes of action. Of relevance here, the FAC amended paragraph 67 to add the specific date – as opposed to just the year – that Brooks' employment ended with SpaceX: "Brooks' sexual harassment of [Dopak] continued throughout his employment with SpaceX, which did not end until on or about *June 15*, 2022." (Italics added.) The FAC also added paragraphs 68 and 71, which alleged, respectively: "In fact, between March 7 to March 11, 2022, Brooks repeatedly forced [Dopak] to have unprotected

5

sex with him while threatening [her] career and job at SpaceX";
and "Brooks, fearing that [Dopak] might report him, contacted
[her] on March 16, 2022, to, again, expressly threaten [her] that if
she reported his sexual harassment that her career at SpaceX
would be over and, worse, that Brooks would ensure that [she]
would never get a dime from him for child support either."

SpaceX moved to compel arbitration of the FAC. It
reiterated its argument that Dopak's sexual harassment claim
accrued before the enactment of the EFAA and, therefore, should
be compelled to arbitration. Dopak opposed, arguing the EFAA
applies, and it precludes forced arbitration of the entire case.

After a hearing, the trial court denied SpaceX's motion.
The court first concluded the EFAA applies because Dopak
alleged the sexual harassment started in June 2019 and
continued after March 3, 2022; therefore, Dopak's claims accrued
after the EFAA's enactment under the continuing violation
doctrine. It then concluded all of Dopak's claims are exempt from
mandatory arbitration because they are inextricably tied to her
cause of action for sexual harassment.

SpaceX timely appealed. (Code Civ. Proc., § 1294,
subd. (a).)

## DISCUSSION

### A.    The FAA and EFAA

The parties' arbitration agreement provides that the
agreement is made under the provisions of the FAA and will be
construed and governed accordingly. Neither party disputes the
applicability of the FAA to their dispute.

The FAA provides that agreements to arbitrate "shall be
valid, irrevocable, and enforceable, save upon such grounds as
exist at law or in equity for revocation of any contract or as

6

otherwise provided in [the EFAA]." (9 U.S.C. § 2.) In relevant part, the EFAA provides: "Notwithstanding any other provision of this title, at the election of the person alleging conduct constituting a sexual harassment dispute or sexual assault dispute, . . . no predispute arbitration agreement . . . shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute or the sexual harassment dispute." (9 U.S.C. § 402(a).)

"[T]he EFAA applies where a plaintiff alleges a course of sexually harassing conduct that occurs both before and after the EFAA's enactment." (*Doe v. Second Street Corp*. (2024) 105 Cal.App.5th 552, 571 (*Second Street*).)

## B.     The FAC is Not a Sham Pleading

The trial court concluded the EFAA applies because the FAC's allegations demonstrate Dopak's claims of sexual harassment accrued after the law's enactment under the continuing violation doctrine. SpaceX does not dispute the applicability of the continuing violation doctrine. Nor does it dispute that the FAC's allegations of sexual harassment are capable of surviving a challenge at the pleading stage. Rather, SpaceX's argument on appeal is limited to its contention that the trial court erroneously relied on sham allegations of post-EFAA conduct.

Under the sham pleading doctrine, if a party files an amended complaint and attempts to avoid the defects of the original complaint by "adding facts inconsistent with those of previous pleadings, the court may take judicial notice of prior pleadings and may disregard any inconsistent allegations." (*Colapinto v. County of Riverside* (1991) 230 Cal.App.3d 147, 151;

7

see also *Owens v. Kings Supermarket* (1988) 198 Cal.App.3d 379 [the policy against sham pleadings permits the court to take judicial notice of the prior pleadings and requires the pleader to explain an inconsistency, and if he or she fails to do so, the court may disregard the inconsistent allegations and read into the amended complaint the allegations of the superseded complaint].)

SpaceX argues the allegations in paragraphs 67 and 68 of the FAC – alleging sexual harassment and misconduct after the effective date of the EFAA – should be disregarded because they directly contradict the original complaint. According to SpaceX, the original complaint acknowledged that the sexual harassment "ended in August 2020." But it did no such thing.

It is true that Dopak alleged in the original complaint and the FAC that she was forced to have unprotected sex with Brooks at least one to two times per week throughout September of 2020. Both pleadings also alleged that in August 2020 (when Dopak found out she was pregnant with Brooks' child), Dopak promised Brooks she would keep the pregnancy a secret and she "used [the] situation in her favor as a way to remove herself from the abusive and coercive situation between herself and Brooks."

But Dopak never alleged that the harassment ended in 2020. Indeed, the original complaint alleged that the harassment did not end with the forced sexual intercourse – he would constantly make sexual and demeaning comments to her during nearly all of their interactions and/or conversations in the office. The original complaint also alleged that Brooks' sexual harassment of her continued throughout his employment with SpaceX, which did not end until 2022. We agree with Dopak that the FAC's more detailed allegations about the exact date Brooks' employment ended in 2022 (i.e., June 15), and the additional

8

allegation that between March 7 to March 11, 2022, Brooks again forced Dopak to have unprotected sex with him, are not inconsistent with any allegations in the original complaint. Allegations that acknowledge a temporary break in certain harassing behavior are wholly consistent with asserting a resumption or continuation of misconduct thereafter.

We therefore conclude the trial court did not err by relying on allegations in the FAC to support its finding that Dopak's claims of sexual harassment accrued after the EFAA's enactment under the continuing violation doctrine.

## C. The EFAA Precludes Forced Arbitration of Dopak's Entire Case

SpaceX alternatively contends that even if the EFAA applies, the trial court erred by denying its motion to compel arbitration of the FAC's claims that are unrelated to the sexual harassment dispute. The parties dispute whether any of the FAC's causes of action are "unrelated" to the sexual harassment claim. SpaceX argues several of Dopak's claims, including her claim for unequal pay and claims of emotional distress, are unrelated to her sexual harassment claim. Dopak counters that all of her claims stem from or are intertwined with the alleged sexual harassment. We need not resolve this dispute, however. Consistent with the other California published cases that have considered this issue, we hold that where a plaintiff's lawsuit contains at least one claim that fits the scope of the EFAA, "the arbitration agreement is unenforceable as to all claims asserted in the lawsuit." (*Liu v. Miniso Depot CA, Inc.* (2024) 105 Cal.App.5th 791, 800; see also *Second Street, supra*, 105 Cal.App.5th at p. 577 [because the EFAA facially applies to " '*a*

9

*case* which . . . relates to the sexual assault dispute or the sexual harassment dispute[,]' " by its plain language, the "statute applies to the entire *case*, not merely to the . . . sexual harassment claims alleged as a part of the case"]; *Casey v. Superior Court* (2025) 108 Cal.App.5th 575, 588 [same].) Although SpaceX argues these courts "erred at arriving at this conclusion," we decline to depart from their holdings which rest on the plain language of the statute.

Accordingly, we conclude that, under the EFAA, Dopak may not be compelled to arbitrate any of her claims in the FAC. The "case" she filed under state law "relates to . . . the sexual harassment dispute" because the FAC contains claims premised on conduct that is alleged to constitute sexual harassment under state law. The trial court, therefore, did not err by denying SpaceX's motion to compel arbitration.

10

## DISPOSITION

The order denying SpaceX's motion to compel arbitration is affirmed. Dopak is awarded her costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


                                        TAMZARIAN, J.

We concur:


ZUKIN, P.J.


VAN ROOYEN, J.*

---

\* Judge of the San Luis Obispo Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

11